**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED
2008 Feb 04 PM 02:47
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 04-36026 |
| | ) | |
| John Gaylord Pruden and | ) | Chapter 13 |
| Helen Ladonna Pruden, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING OBJECTION TO PROOF OF CLAIM

This case is before the court on Debtors' Objection to Proof of Claim of Estate of Glenn Pruden ("Claimant") [Doc. # 56]. At issue are debts owed by John Pruden ("Debtor") to his father, Glenn Pruden, who is now deceased, that are secured by mortgages on Debtors' farm. Although Debtors admitted owing Glenn Pruden's estate money, they disputed the amount owed. Claimant asserted that the balance due on the date Debtors filed their bankruptcy petition was $440,760.69, including compounded interest, while Debtors argued that only $17,209.12 is owed. On December 28, 2007, the court entered an order deciding the issue of the principal amount owed by Debtors. [Doc. # 142]. The court found that as of February 28, 2001, Debtor owed his father $28,483.14. The court also found that Claimant improperly calculated the amount of the claim by compounding interest and that only simple interest may be used. The court, therefore, indicated that Debtors' objection will be sustained in part and denied in part. However, a final judgment has not been entered as the court noted several issues relating to the proper calculation of interest in this case and ordered the parties to file further briefs addressing the proper rate and calculation of interest. Based upon a review of those briefs, and for the reasons discussed below, the court finds that Claimant is

entitled to both prepetition and postpetition interest at a rate of 6%.

## BACKGROUND

The court's order entered on December 28, 2007, sets forth in some detail its factual findings relating to the years of financial dealings between Debtor and his father. This order includes additional facts and highlights those facts from the court's previous order relevant to the parties' arguments relating to, and the court's determination of, the proper rate and calculation of interest.

The claims at issue in this case are based on two transactions involving Debtor and his father – a payment for real estate taxes by Glenn Pruden on behalf of Debtors in 1994 and a 1996 purchase by and assignment to Glenn Pruden of a note and mortgage against Debtors' farm held by Metropolitan Life Insurance Company ("Met Life transaction"). Nevertheless, given the nature of these transactions and the lack of any document offered as a contemporaneous account of payments made by Debtor to his father, in determining the amount owed by Debtor, the court found it necessary to consider additional financial transactions involving Debtor and his father during the relevant time period, including payments by Glenn Pruden to Bill and Kathy Fair ("the Fairs") in satisfaction of an obligation owed to them by Debtor.

In 1978, Debtors executed a note in the principal amount of $210,000 with interest to accrue at 9.5% per annum in favor of Met Life ("Note"). The Note was secured by a mortgage on the real property owned by Debtors (the "Mortgage"). [Claimant's Exs. 1 and 2]. A final payment on the Note was due on June 1, 1993. The Note provided that "[i]f any part of the principal or interest is not paid at maturity it shall bear interest thereafter at the rate of 8 percent per annum." [Claimant's Ex. 1]. On March 15, 1996, the sum of $195,722.43 was paid to Met Life in satisfaction of the amount owed by Debtors. Of the total amount paid, $105,722.43 was paid from the joint checking account of Glenn and Vera Pruden, the funds for which were in part contributed by Debtor. The remaining $90,000 was, in essence, borrowed by Debtors from their neighbors William and Kathy Fair ("the Fairs"). [*See* Debtors' Exs. R and S]. The Met Life Note and Mortgage were then assigned to Glenn Pruden. [Debtors' Ex. T]. After the Met Life transaction in March 1996, Debtor owed his father $7,971.27. As of December 17, 1996, Debtor had made payments satisfying this debt and leaving him with a positive balance of $374.29.[1]

Debtors failed to repay the $90,000 borrowed from the Fairs. As a result, the Fairs filed a lawsuit in state court against both Debtors and Glenn Pruden, who also had an interest in the property in issue

---

[1] The court's reference to a positive or negative balance is a reference to the ledger account of Debtor's transactions with his father that was admitted as an exhibit at the hearing on the objection as adjusted by this court's order entered December 28, 2007.

2

under the assigned Met Life mortgage. On October 29, 1997, the state court entered a judgment against Debtors in favor of the Fairs in the amount of $99,450 plus interest at the rate of 10% per annum. [Claimant's Supplemental Ex. A]. On October 22, 1998, Glenn Pruden executed a promissory note in favor of the Fairs in settlement of Debtors' obligation under that judgment. [*See* Claimant's Ex. 13]. On November 24, 1998, a check in the amount of $111,124 was issued from the checking account of Glenn and Vera Pruden to attorney Steve Keister as payment to the Fairs in satisfaction of the promissory note. [Debtors' Ex. W]. Immediately before the $111,124 payment to the Fairs, there was a positive balance in favor of Debtor in the amount of $79,629.07. Immediately after the $111,124 payment was made, there was a negative balance indicating that Debtor owed his father $31,494.93 as of November 24, 1998. Debtor concedes, and the court finds, that he agreed to pay six percent interest on the funds borrowed from his father in order to pay the Fairs. [*See* Debtors' Ex. C, p. 2; Doc. # 145, unnumbered p. 2, n.6].[2]

After that date, no further loans were made to Debtor by his father. Between November 25, 1998, and February 28, 2001, Debtor incurred rent expenses owed to his father totaling $19,000 and, in that regard, made payments to his father totaling $22,011.79, leaving him with a balance or overpayment with respect to his rent obligations of $3,011.79.[3] This amount applied towards the debt owed to his father on account of the Fair obligation nets $28,483.14 owed by Debtor as of February 28, 2001. However, during the November 24, 1999, through February 2001 period of time, Debtor's balance owed to his father on account of the Fair obligation did not fall below $31,494.93 until his February 2001 payment.

## LAW AND ANALYSIS

Throughout this litigation, Claimant has asserted different interest rates as being applicable in determining the allowed amount of its claim, relying on interest rates set forth in various documents relating to transactions between Debtor and his father. In its prior order, the court had not made a finding regarding the interest rate agreed upon by Debtor and his father and it questioned whether the interest rate is governed by the provisions of the Met Life Note, the provisions of Debtors' agreement with the Fairs, or by the statutory rate under Ohio Revised Code §§1343.03 and 5703.47. In its supplemental brief, Claimant argues that an interest rate of 10% should be applied to the debt owed by Debtor for the entire period from November 24, 1998, until paid in full, since that is the interest rate determined by the state court to be paid

---

[2] Debtor's testimony at the hearing also confirms that he had agreed to pay interest on the funds loaned with respect to the Fair obligation.

[3] According to Debtor the payments made by him after November 24, 1998 were made in payment of his rent obligations. This testimony is consistent with Vera Pruden's testimony that Debtor owes nothing on account of rent payments.

3

by Debtors in the Fair litigation. Debtor, on the other hand, argues that his oral agreement with his father to pay interest at a rate of 6% should be applied until paid in full. Alternatively, Debtor contends that the Ohio prejudgment interest statute should apply. Having reviewed Debtor's testimony and the documentary evidence in this case, and for the reasons that follow, the court finds that the 6% contractual rate of interest under Debtor's oral agreement with his father should be applied from November 24, 1999, until confirmation of Debtors' Chapter 13 plan.

The starting point in determining the allowed amount of a claim is 11 U.S.C. § 502(b).[4] That subsection provides, with other exceptions not applicable in this case, as follows:

> if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that –
> . . . .
> (2) such claim is for unmatured interest.

11 U.S.C. § 502(b). As a general rule, pursuant to this provision, interest on prepetition claims stops accruing as of the date the bankruptcy petition is filed. With respect to secured claims, however, postpetition interest is allowed in accordance with § 506(b). That section provides as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

Claimant's proof of claim asserts, and Debtors do not dispute, that the debt owed to Glenn Pruden's estate is secured by a mortgage on Debtors' real property. Both Claimant and Debtor cite § 506(b) as a basis for their calculation of postpetition interest on the claim at issue in this case, thus acknowledging that the value of the property securing the claim is greater than the amount of the claim. As such, Claimant is entitled to both prepetition and postpetition interest.

The transaction that resulted in the debt owed by Debtor to his father as of November 24, 1998, is Glenn Pruden's payment to the Fairs. That payment was made in satisfaction of the promissory note that

---

[4] Section 502 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005. Because Plaintiff's bankruptcy case was filed before the effective date of the Act, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

4

he executed in their favor in settlement of Debtors' obligation under the state court judgment. As discussed above, the payment consisted of both Debtor's funds and funds provided by Glenn Pruden. After the execution of the promissory note, and certainly after the Fairs received payment in satisfaction of the note, neither Debtor nor his father had any further obligation under the state court judgment. Debtor's obligation then ran to his father under Debtor's agreement with him to provide the additional funds necessary to satisfy the obligation owed to the Fairs. As such, the court finds no basis for imposing, as argued by Claimant, the 10% interest rate set forth in the state court judgment on Debtor's agreement with his father or, for that matter, the interest rate set forth in any other document relating to obligations that had already been satisfied, i.e. the Met Life Note and Debtors' original agreement with the Fairs.

Although it is clear that § 506(b) does not mandate that the rate of interest to which an oversecured creditor is entitled be the contractual rate, *see United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, (1989), courts generally do allow the contractual rate, *see, e.g., In re Terry Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir. 1994) (stating there is "a presumption in favor of the contract rate subject to rebuttal based upon equitable considerations"); *In re Laymon*, 958 F.2d 72, 75 (5th Cir. 1992) (finding the contract rate applies when an oversecured creditors claim arises from a contract). The court finds that the contract rate of 6% in this case should be applied postpetition as well as prepetition.

Finally, the court addresses the calculation of interest on the claim in this case. In its supplemental brief, Claimant calculates interest on $31,494.93 from November 24, 1998, until the claim is paid. While Debtor owed his father that amount on November 24, 1998, as of February 28, 2001, Debtor owed only $28,483.14. Nevertheless, during the November 24, 1998, through February 2001 period of time, Debtor's balance owed to his father on account of the Fair obligation did not fall below $31,494.93 until his February 2001 payment. It is, therefore, appropriate to calculate interest at 6% on $31,494.93 for the period from November 24, 1998, through February 28, 2001, and thereafter interest should be calculated at 6% on $28,483.14 until confirmation of Debtors' Chapter 13 plan. Interest after confirmation shall be paid as provided in any confirmed plan.

A separate order will be entered in accordance with this Memorandum and the Order Regarding Objection to Proof of Claim entered on December 28, 2007.